IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

CASA ORLANDO APARTMENTS, LTD.,
relating to Pine View Apartments;

JASPER HOUSING DEVELOPMENT
COMPANY, relating to Pine View
Apartments;

ALFRED and JEAN J. PORKOLAB;

ALAN B. PORKOLAB, as Trustee of the
PORKOLAB FAMILY TRUST NO.1,
relating to Lowell Apartments, Lorain, Ohio,

　　　　Plaintiffs,

　　v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

　　　　Defendant.

Civil Action No. 504 Civ 129

JUDGE DAVID J. FOLSOM

---

## RESPONSE IN OPPOSITION TO PLAINTIFFS'
## MOTION TO UNSEAL THE DOCKET

---

Defendant Federal National Mortgage Association ("Fannie Mae") respectfully submits this response in opposition to plaintiffs' motion to unseal the docket.

### INTRODUCTION

Plaintiffs' motion to unseal the docket is truly puzzling. While they claim to have communicated with an attorney at the U.S. Department of Housing and Urban Development ("HUD") concerning the documents that have been filed under seal in this action, HUD has not asked either Fannie Mae or this Court for any documents that were filed under seal pursuant to the Court's protective order. While plaintiffs claim that the docket should be unsealed so that

absent putative class members can access documents that were marked "confidential" pursuant to the Court's protective order, no putative class members have asked for access to such documents. And since the parties have agreed to a discovery stay pending the Court's ruling on plaintiffs' motion for class certification, there is no other exigency that could explain plaintiffs' sudden desire to abrogate the process for determining document confidentiality that has been in place since the Court entered its protective order on November 16, 2005.  Given the lack of any legitimate basis for the present motion, the Court should be extremely wary of plaintiffs' suggestion that it dispense with the niceties of the stipulated protective order that has governed this litigation for nearly three years and throw open a record that contains all manner of confidential information.[1]

If plaintiffs' dispute was with the confidential designation of certain specific documents, the dispute could probably be resolved without the Court's intervention; plaintiffs could send a list of the disputed documents to Fannie Mae's counsel, and the parties could confer as to which documents merit confidential treatment and which arguably do not.  But that is not what plaintiffs seek; instead, they ask that *all* documents in the Court docket be unsealed without any specific showing as to any specific document.  Plaintiffs' motion therefore fails for a number of reasons.  First, in seeking an across-the-board unsealing of the entire Court docket, plaintiffs fail to identify any specific documents that are not themselves entitled to confidential treatment – a process required under the Court's protective order.  The only two documents attached to plaintiffs' motion – a commercial contract with a third party that contains an express confidentiality provision, and an internal Fannie Mae memorandum setting forth the company's

---

[1] Plaintiffs' motion is replete with misleading rhetoric and inaccurate characterizations of the factual record.  (*See, e.g.,* Pl. Mot. at 8 (asserting a "straightforward internal corporate admission of . . . illegal conduct").)  Their hyperbole is largely irrelevant to the instant motion and thus unnecessary to discuss here.  Suffice it to say that Fannie Mae disagrees with these characterizations.

2

pricing and financial strategy – do not support plaintiffs' argument, and in fact only underscore the existence in the docket of documents that are traditionally afforded confidential treatment by federal courts.  Should plaintiffs believe that particular, specific documents designated confidential should be re-designated nonconfidential, Fannie Mae of course would be happy to confer with plaintiffs' counsel about that and would readily agree to re-designate any specific documents that do not merit confidential treatment – but plaintiffs' counsel have so far refused to engage in such a document-specific conference with Fannie Mae.  (*See* Section I.A *infra*.)  Second, to the extent plaintiffs ask to modify the protective order and be relieved of its requirement to identify specific documents that do not merit confidential treatment, plaintiffs fail to provide any reason why the provisions of the protective order to which they stipulated and which the Court entered are no longer appropriate.  (*See* Section I.B, *infra*.)

If plaintiffs' substantive confidentiality arguments are wrong, their assertion that there is some exigent need to unseal the docket at this juncture is even more untenable.  While no government agency or putative class member has actually asked for any sealed court filings, the existing protective order provides an appropriate process for addressing such requests should they ever occur.  More importantly, plaintiffs' assertion that HUD and OFHEO (the Office of Federal Housing Enterprise Oversight, an independent organization within HUD) need to go through the Court to obtain Fannie Mae's confidential business information is simply absurd.  HUD and OFHEO are Fannie Mae's primary regulators and have daily access to the company and its information.   Fannie Mae works (and will continue to work) cooperatively with these agencies on any issues of concern to them.   Moreover, HUD and OFHEO have their own regulatory and enforcement authority to obtain needed documents directly from Fannie Mae, without need for intervention by plaintiffs' counsel or this Court.  In short, although plaintiffs try

to manufacture some kind of tension between Fannie Mae and these regulators, there is none. (*See* Section II.A-B, *infra*.)

Finally, the "open access" doctrine invoked by plaintiffs does not point to a contrary conclusion, particularly because none of the documents in question has been proposed for introduction at trial, where that doctrine normally is applied.  (*See* Section II.C, *infra*.)

### FACTUAL BACKGROUND

A.     THE STIPULATED PROTECTIVE ORDER

From the tone of plaintiffs' motion, one might imagine that plaintiffs learned only recently that Fannie Mae had designated certain documents confidential and had filed such documents under seal.  In fact, plaintiffs themselves stipulated to the protective order that was entered by the Court in 2005, pursuant to which Fannie Mae produced more than 200,000 pages of documents – some designated confidential, and some not.  That protective order sets forth specific procedures for designating documents confidential, and specific procedures for challenging confidentiality designations.  (*See* Stipulation and Protective Order, (attached as Ex. D to Patton Decl.) ("Protective Order").)

The Protective Order defines confidential information to include "[a]ny Litigation Material that contains or discloses such Party's confidential business information, trade secrets or sensitive proprietary commercial, financial or research information that has not been released into the public domain."  (*Id.* at 3.)  If a party determines that a document contains such information, it may "conspicuously stamp[] the word 'CONFIDENTIAL' on each page . . . . " (*Id.*)  In the event the receiving party disagrees that a particular document is entitled to confidential treatment, that party "shall set forth its objection in writing to the Producing Party, and such Objecting Party and Producing Party shall meet and confer as soon as practicable in a

good faith effort to resolve their differences." (*Id.* at 5.)

Should the parties not resolve the dispute through the meet-and-confer process, the Protective Order provided an orderly process for bringing the dispute to the Court's attention. "Failing resolution, the Objecting Party may, as soon as practicable after the meeting and conference, file a motion to remove the Confidential Information designation" from the document. (*Id.* at 5.)

## B.     FANNIE MAE'S CONFIDENTIALITY DESIGNATIONS

Contrary to plaintiffs' assertion that "FNMA marked almost every single document submitted to the Plaintiffs as 'Confidential'," (Pls.' Mot. at 13), Fannie Mae made its document production based on careful evaluation of the contents of each document on a document-by-document basis. Thousands of pages of Fannie Mae's document production were not stamped "confidential," including such things as publicly released information, certain manuals, and information and account statements relating to the named plaintiffs. At the same time, Fannie Mae invoked its authority under the Protective Order to designate other documents confidential, including nonpublic individually identifiable account information relating to borrowers other than the named plaintiffs,[2] minutes of meetings of the Fannie Mae board of directors, contracts with commercial counterparties that contain confidentiality requirements, documents reflecting internal compliance strategies and risk assessments, and financial documents reflecting Fannie Mae's investment allocations and rates of return. Plaintiffs did not object to a single confidentiality designation during the period when documents were being produced by Fannie

---

[2] While plaintiffs correctly point out that certain loan information is available on HUD's website (*see* Pl. Mot. at 4), that points to the opposite conclusion from that suggested by plaintiffs. To the extent that certain borrower-specific information is available on the Internet, there is no need to revisit prior confidentiality designations here in order to provide access to information that is more easily accessible via the Internet. But even plaintiffs do not suggest that *all* the borrower-specific information produced by Fannie Mae in discovery is publicly available, a fact which further undercuts their motion.

Mae.[3]

Contrary to plaintiffs' suggestion in the pending motion, nothing about Fannie Mae's confidentiality designations during discovery was inconsistent with Fannie Mae's position on the merits that the practice of retaining income on uninvested escrow balances was widely understood and accepted by HUD, the courts, and others. That position is incontrovertible based on appellate court decisions published throughout the 1970s approving what was acknowledged to be a "common practice" in the industry. *LaThrop v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 194 (Ill. 1977); *see also Gibson v. First Fed. Sav. & Loan Ass'n*, 504 F.2d 826, 829 (6th Cir. 1974) (affirming dismissal of lawsuit challenging mortgage servicer's "commingling and investment of [HUD-insured] escrow funds"); *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1168-70 (Ariz. 1976) (collecting cases and reaching same holding). It is made even clearer by the letter sent in 1992 by HUD regional director Gareth Dowlen to named plaintiff Alfred Porkolab, in which director Dowlen stated that "[t]he disposition of any interest earned on monies held by FNMA is a matter internal to FNMA. These monies fall entirely under their discretion and again, the Department of HUD has no authority over FNMA's monetary disposition policies." (*See* Exh. 1.) And it is further underscored by the affidavit of former HUD Deputy Undersecretary William Ross, whose affidavit affirms that, during his tenure at HUD, he was aware of Fannie Mae's practice of retaining income on uninvested escrow balances precisely as alleged here. (*See* Exh. 2.)

The proposition that HUD, the courts, and others were aware of and approved the conduct at issue has nothing to do, of course, with Fannie Mae's designation of documents as

---

[3] In their demand for such an extreme remedy, plaintiffs refused to undertake any specific assessment of the current record. Accordingly, Fannie Mae does not inundate the Court with a voluminous document-by-document argument in response to plaintiffs' vague assertions. Should the Court grant plaintiffs' motion, Fannie Mae respectfully requests the opportunity to express to the Court why specific documents must remain sealed.

confidential in this litigation.  Fannie Mae has never argued that individual borrower account balances were public information, and so its designation of such documents as confidential is irrelevant for purposes of the present motion.  Nor has Fannie Mae argued that its contracts with business partners such as GMAC Mortgage, or its board minutes, or its specific internal investment strategies and rates of return, are public knowledge.  In short, the contradiction plaintiffs manufacture in their motion simply does not exist.  Fannie Mae designated as confidential those documents in its production that are entitled to confidential treatment under established law, and left undesignated those documents that are not entitled to confidential treatment.

### C.   THE HISTORY OF THE MOTION TO UNSEAL

Plaintiffs suggest that their motion to unseal the record was spawned by the purported recent expressions of interest of various government agencies and putative class members in viewing the sealed documents in the record.  But, as illustrated by plaintiffs' own exhibits, plaintiffs actually have been threatening to file this motion for nearly two years.  In 2006 – nearly two years before plaintiffs' counsel's correspondence to HUD, plaintiffs informed Fannie Mae's counsel that they were "preparing a Motion to Unseal all documents filed in this case." (Email from N. Patton to B. Brooks (Aug. 4, 2006) (attached as Ex. B to Patton Decl.).)  Fannie Mae asked for plaintiffs' reasons so that it could "meaningfully consider" the request.  (*Id.*) Rather than give any reason for unsealing the documents, let alone identify any particular documents they believed did not qualify for confidential treatment, plaintiffs' counsel made clear that they were merely notifying Fannie Mae as a matter of form, and had no intention of conferring in an attempt to resolve the dispute; as counsel stated, "This is simply meet and confer as to the filing of the motion; do you object or do you not.  The motion will set forth our

reasons." Fannie Mae then stated what it believed then, and what it continues to believe now –

namely, that, if plaintiffs have concerns about the confidential designation of any specific

documents, they should identify those documents and Fannie Mae will be happy to work with

them to resolve any disputes.  As Fannie Mae stated in August 2006 when plaintiffs first raised

this issue:

> [T]he protective order, to which plaintiffs consented, actually
> requires that reasons be given *before* a motion is filed.  When
> you say you intend to ask that the entire file be stripped of
> confidentiality designations, I have no way of intelligently
> responding.  Are you saying you want borrower-specific
> information declassified, even if it would be regarded as
> confidential under federal or state financial privacy laws?  Are you
> saying you want to declassify doc[uments] relating to GMAC's or
> Fannie Mae's current practices, even those [that] may well qualify
> as trade secrets under Rule 26(c)(7)?  We would naturally like to
> be reasonable in response to a reasonable request, but can't consent
> to an unlimited abandonment of confidentiality designations that
> were made pursuant to an order that plaintiffs agreed to at the
> outset of the litigation.  In short, if plaintiffs won't give any
> document-specific reasons why particular doc[uments] no longer
> qualify for confidentiality under an agreed protective order that
> requires the opponent of confidentiality to give advance reasons,
> then unfortunately we will have to oppose the motion.  If plaintiffs
> comply with the requirement of articulating reasons that we should
> consider, however, we would be happy to consider them.

(*Id.*)  In the nearly two year since this correspondence, plaintiffs did not give any such reasons to

Fannie Mae at that time, nor did they file a motion to unseal.  Nor did they provide Fannie Mae

with a list of documents that they believed should be reclassified as non-confidential.  Instead,

they waited until Friday afternoon, May 9, 2008; telephoned Fannie Mae's counsel to state that

the motion would be filed shortly (again, without identifying any specific documents they

believed should not be afforded confidential treatment); and filed the motion approximately one

hour later.

<u>ARGUMENT</u>

I.   **PLAINTIFFS' MOTION IS INCONSISTENT WITH THE COURT'S PROTECTIVE ORDER.**

A.   **PLAINTIFFS HAVE FAILED TO IDENTIFY ANY SPECIFIC DOCUMENTS THAT ARE NOT ENTITLED TO CONFIDENTIAL TREATMENT.**

Plaintiffs' motion to unseal the entire court record is premised on the false assertion that "Fannie Mae has indiscriminately designated nearly its entire production as presenting Confidential Information . . . ." (Pls.' Mot. at 5-6.) In fact, as explained above, Fannie Mae produced thousands of pages of documents that were not designated confidential. At the same time, it should not be surprising that, in a putative class action involving several thousand mortgage borrowers, Fannie Mae marked as confidential the individually identifiable account records of those borrowers, along with the kind of internal trade-secret and financial information that is traditionally afforded confidential treatment under the law, including board minutes, investment allocations and rates of return, risk assessments and compliance strategies, and the like. In the more than two years since Fannie Mae completed the production of these documents, plaintiffs have never challenged a confidentiality designation as they were entitled to do under the Protective Order. Nor have they done so now; this blanket motion to unseal the entire record fails to identify a single document that is not properly treated as confidential, and for that reason alone the motion must be denied.

Remarkably, out of more than 200,000 pages of documents produced by Fannie Mae, plaintiffs' motion identifies only *two* actual documents that they believe justify an order unsealing the record.[4] If these two documents are any indication, Fannie Mae's confidentiality

---

[4] Plaintiffs also make an ambiguous challenge to the confidentiality designation of the transcripts and exhibits from the depositions of Fannie Mae employees Joseph Funk, Anne Kelly, and Gerald LaHaie. (Pls.' Mot. Unseal, at 6.) But the Protective Order expressly contemplated that confidential information may be transmitted through depositions. (Protective Order at 3 ("Confidential Information disclosed at a deposition shall be designated as such

designations were absolutely appropriate and should maintained.

One of the two specific documents plaintiffs identify for unsealing is an agreement between Fannie Mae and non-party GMAC Mortgage.  (*See* Letter from B. Moore to G. La Haie, at 5 (July 12, 1996) (attached as Ex. O to Patton Decl.).)  Yet the Fannie Mae-GMAC agreement contains an express contractual confidentiality obligation.[5]  It is hard to conceive of a clearer justification for a confidentiality designation than that.  *See, e.g.*, *Chires v. Cumulus Broad. LLC*, No. 06-CV-14971-DT, 2007 WL 1648888, at *3 (E.D. Mich. June 6, 2007) (Recognizing "Defendants have a contractual obligation to Arbitron to keep Arbitron data confidential. . . . Defendants may file a motion for a protective order to have the document(s) at issue filed under seal . . . .").

The other document plaintiffs identify for unsealing is an internal company memorandum detailing the company's assessment of the risk presented by borrower complaints.  (*See* Internal Memorandum (attached as Ex. G to Patton Decl.).)  Yet because this document contains information about Fannie Mae's confidential business strategies, including Fannie Mae's fee structuring and pricing options and its contemplated internal procedures for addressing these borrower issues, it is clearly entitled to confidential treatment.  *See, e.g., American Hardware Mfrs. Ass'n v. Reed Elsevier Inc.*, No. 03 C 9421, 2007 WL 1521185, at *4 (N.D. Ill. May 14, 2007. ("Because we recognize that disclosure of confidential financial information to competitors may cause Reed great harm, and that financial information is specifically

---

on the record or by a letter to all counsel of record within 30 days of receiving the transcript..").)  Moreover, plaintiffs acknowledge that the transcripts and at least some of the exhibits must remain sealed, providing yet more evidence that the record must not be unsealed.  (*See* Pls.' Mot. Unseal R., at 6 ("'[W]e do not view ***every document*** that was marked at these depositions to be confidential.'" (quoting Letter from E. Janush to B. Brooks (Mar. 7, 2006) (attached as Ex. F to Patton Decl.) (emphasis added)).)

[5] Plaintiffs acknowledge the agreement's confidentiality statement and allege that this manifests that Fannie Mae "conspired" to hide its business from HUD.  (Pls.' Mot. Unseal, at 19.)  As explained, this private civil lawsuit is not an action taken by HUD and plaintiffs' attempts to create the impression of a governmental investigation does not make it so.

contemplated in the definition of 'confidential information' in the protective order, we decline to remove Reed's confidential designation." (citations omitted)); *Sullivan Mktg. v. Valassis Comm'ns*, No. 93 Civ. 6350, 1994 U.S. Dist. LEXIS 5824 , at *3 (S.D.N.Y. May 5, 1994) ("Though perhaps not on a par with a 'secret formula,' pricing and marketing strategies are widely held to be confidential business information that may be subject to a protective order.").[6]

In short, the only two documents specifically identified by plaintiffs in their motion actually underscore the need for confidential treatment pursuant to the Protective Order.  But if plaintiffs had been able to identify a document that, on review, was not deserving of protection, that would not be sufficient to justify the blanket relief they now request – namely, an order unsealing ***all*** confidential documents in the court record.  As another district court in the Fifth Circuit held in analogous circumstances, the protections of a confidentiality order cannot be lifted across the board merely because "20 documents of the 2,500 produced . . . were improperly marked confidential . . . particularly given that the Plaintiffs have not taken the stipulated steps called for under the consent order to challenge the 'volumes' of documents allegedly improperly designated as 'confidential.'"  *Holland v. Summit Tech., Inc.*, No. 00-2313, 2001 U.S. Dist. LEXIS 15732, at *3 (E.D. La. Sept. 21, 2001).  Here, plaintiffs have failed to identify even ***one*** document that is not entitled to confidential treatment.  In these circumstances, their motion plainly must be denied.

While it is not Fannie Mae's burden at this stage to establish the entitlement of any particular document to confidential treatment, it bears mention that the categories of documents

---

[6] To the extent that plaintiffs argue that this document is relevant to their case on the merits on plaintiffs' underlying legal claims, (*see* Pls.' Mot. Unseal, at 8,) they confuse the issue of presently before the Court; just because a document may be relevant to their case on the merits does not unequivocally bar that document from receiving confidentiality status.  On the contrary, plaintiffs' position simply illustrates the indulgence that they were afforded by Fannie Mae's reliance on the Protective Order, reaffirming the premise that "'***[b]lanket' protective orders are essential to the functioning of civil discovery***," *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *6 (E.D. La. Apr. 5, 2004).

it has designated as confidential are are routinely accorded confidential treatment by federal courts.  *See, e.g.*, *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) ("Documents falling into categories commonly sealed are those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like." (quoting *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999)); *Jackson v. Capital Bank & Trust Co.*, Nos. 90-4734, 90-4735, 1993 WL 149861, at *3 (E.D. La. April 28, 1993) ("[T]he confidentiality of the records of the individual borrowers. . . . can be adequately protected by a protective order."); *Kamp Implement Co., Inc. v. J.I. Case Co.*, 630 F. Supp. 218, 220 (D. Mont. 1986) ("Defendants are entitled to some safeguards against untrammeled dissemination of their internal financial information."); *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *2, *8 (E.D. La. Apr. 5, 2004) (adopting protective order keeping confidential "board minutes reflecting company strategy").  Stripping these documents of their confidential status now, after Fannie Mae produced them in reliance on the terms of the Protective Order and established case law, would have serious systemic consequences for the broader judicial process and should not be countenanced by this Court.  *See Manual for Complex Litigation*, (Fourth) § 11.432 (2007) ("If a party freely disclosed information without contest based on the premise that it would remain confidential, subsequent dissemination may be unfair and may, in the long run, reduce other litigants' confidence in protective orders, rendering them less useful as a tool for preventing discovery abuse and encouraging more strenuous objections to discovery requests.").

> **B.     PLAINTIFFS CANNOT CARRY THEIR BURDEN OF JUSTIFYING A MODIFICATION OF THE PROCESS FOR CHALLENGING CONFIDENTIALITY DESIGNATIONS SET FORTH IN THE COURT'S PROTECTIVE ORDER.**

Since plaintiffs do not propose a document-by-document determination of confidentiality,

and instead seek an across-the-board unsealing of all documents in the Court record, their motion amounts to a request to abandon, or at least significantly modify, the Protective Order.  In considering such requests, courts typically apply a four-step analysis.  First, "if good cause was shown for the original protective order, the burden is on the party seeking modification to show good cause for modification."  Courts then consider "the nature of the protective order," "the foreseeability at the time of the original protective order of the modification now requested," and "the parties' reliance on the protective order."  *Bayer AG v. Barr Lab.*, 162 F.R.D. 456, 462-63 (S.D.N.Y. 1995); *see also Holland*, 2001 U.S. Dist. LEXIS 15732, at *5.  Under this analysis, plaintiffs' motion clearly fails.

First, although a protective order "may be modified upon a showing of good cause," *Alexander v. FBI*, 186 F.R.D. 99, 100 (D.D.C. 1998), "[t]he party seeking modification of a protective order bears the burden of showing that good cause exists."[7]  *Infineon Tech. AG v. Green Power Tech. Ltd.*, 247 F.R.D. 1, 2 (D.D.C. 2005).  To support modification, a party must show "changed circumstances or new situations; a continuing objection to the terms of an order does not constitute good cause to modify or withdraw a protective order."  *Infineon Tech.*, 247 F.R.D. at 2.  True, plaintiffs point out that they have written a letter to HUD concerning this case, but their own self-serving actions cannot constitute a "changed circumstance," and neither HUD nor any other government agency has actually requested that any part of the Court docket be unsealed.  In any event, the Protective Order itself contemplates that government agencies or other third parties might possibly seek information designated as confidential, and prescribes a process for providing confidential information in such circumstances subject to a requirement of advance notice to the producing party and an opportunity to challenge the request in court.

---

[7] "'Good cause' generally exists for issuance of a blanket protective order permitting competitors to designate 'confidential' commercial information as protected—at least in the context of a party motion for modification of a stipulated protective order."  *Bayer AG v. Barr Lab.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995).

Second, because plaintiffs stipulated to the narrowly tailored protective order, the nature of the Protective Order weighs heavily against modification at this juncture.  *See, e.g., Bayer*, 162 F.R.D. at 465 (S.D.N.Y. 1995) ("Where, however, the modification motion is brought by a party who stipulated to a blanket protective order, the party should be held to its agreement and thus should have the burden of showing good cause for its modification request.").  That is all the more true here, where the text of the stipulated protective order was drawn from an order plaintiffs' counsel had used in a previous case.  Counsel therefore was perfectly aware at the outset of discovery that that protective order would cover each "Party's confidential business information, trade secrets or sensitive proprietary commercial, financial or research information that has not been released into the public domain."  (Protective Order, at 3.)

Third, plaintiffs offer no reason why the arguments they now advance against confidentiality were not fully "foreseeable at the time the parties negotiated the original Protective Order."  *Id.*  Indeed, the very purpose of the protective order was to facilitate the free flow of confidential documents between Fannie Mae and plaintiffs' counsel without need for judicial intervention as each confidential document was identified as such; the idea that such documents would later be filed under seal by one party or another in support of various motions was specifically contemplated at the time of the stipulation.

Finally, Fannie Mae's reliance on the Protective Order as it produced more than 200,000 pages of documents weighs strongly against  modification at this juncture.  "If the Court were to allow [plaintiffs] to modify the Protective Order after [Fannie Mae] has produced [hundreds of thousands] of documents in reliance on that Order, the Court would be sending a negative message to future litigants."  *Bayer*, 162 F.R.D. at 467; *see also Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 180 (N.D. Ill. 2006) ("[T]he protective order has been in effect for nearly

two years[, c]ertainly it can be said that Bel Fuse has come to rely on it; it is part of the landscape of this case."); *Lee Shuknecht & Sons*, 927 F. Supp. at 616 ("Vigneri has relied upon the order as a means of protecting its putative trade secrets, while giving Shuknecht access to the information it claimed to be seeking—information pertinent to the possible infringement of the Shuknecht patents.").

In sum, plaintiffs cannot satisfy the test for retrospectively modifying the protection Fannie Mae was entitled to under the protective order when it produced documents to plaintiffs during discovery.  Plaintiffs' motion therefore should be denied.

## II.     PLAINTIFFS' PUTATIVE REASONS FOR UNSEALING THE RECORD ARE GROUNDLESS.

### A.     NOTHING ABOUT THE COURT'S PROTECTIVE ORDER IMPEDES ACCESS TO CONFIDENTIAL MATERIALS BY GOVERNMENTAL AUTHORITIES.

Plaintiffs' motion relies heavily on rhetoric suggesting that HUD, OFHEO, and other government agencies need access to the materials that have been filed under seal pursuant to the Court's protective order.  Putting aside the fact that none of the referenced agencies have actually sought such materials from either Fannie Mae or the Court, these government agencies have their own statutory powers to obtain information from Fannie Mae – and, in the unlikely event they chose to subpoena confidential information from plaintiffs rather than seeking it directly from Fannie Mae, the protective order itself provides a process for adjudicating such requests.

Consider plaintiffs' suggestion that "Fannie Mae's regulators at HUD and OFHEO will benefit by unsealing the record."  (Pl. Mot. at 17.)  These agencies need no assistance from plaintiffs' counsel if they require documents from Fannie Mae.  Fannie Mae provides its regulators with ongoing access to confidential material (subject to confidentiality protections). Plaintiffs do not (and cannot) allege that Fannie Mae has refused to provide these agencies with

any documents which they requested.  Their effort to manufacture a dispute between Fannie Mae

and its regulators does not create one.  Moreover, OFHEO, an agency within HUD, has "the

authority to establish capital standards, require financial disclosure, prescribe adequate standards

for books and records and other internal controls, conduct examinations when necessary, and

enforce compliance with the standards and rules that it establishes . . . ."  12 U.S.C. § 4501.

Should HUD or OFHEO need documents from Fannie Mae, they almost certainly will seek them

directly through their examination powers, and not through the roundabout process of moving to

unseal a civil court docket.  In any event, Fannie Mae's confidentiality designations in this

particular piece of civil litigation, to which neither HUD nor OFHEO is a party, cannot limit the

direct regulatory authority those agencies have to examine Fannie Mae's books and records, and

there thus is no reason this Court's intervention is needed to protect their interests.[8]

The Securities and Exchange Commission, also invoked by plaintiffs (*see* Pl. Mot. at 20),

is equally capable of obtaining documents from Fannie Mae should it decide to do so.  The SEC

"has statutory authority to conduct nonpublic investigations into possible violations of the

securities laws and, in the course thereof, to issue subpoenas to obtain relevant information."

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 737 (1984).[9]  As noted above, Fannie Mae's

confidentiality designations in this civil action cannot alter or limit the SEC's subpoena power,

and thus any ruling by this Court on plaintiffs' motion would not increase or decrease the SEC's

access in any way.

---

[8] It is worth noting that plaintiffs' suggestion that the subject matter of this litigation is something in which HUD and OFHEO have an important regulatory interest underscores one reason why class litigation is not the superior means of proceeding here; HUD's oversight (and, in Mr. Porkolab's case, resolution) of these issues demonstrates that the administrative process is the superior means of addressing the challenged conduct.  (*See* Federal National Mortgage Association's Opposition to Plaintiffs' Motion for Class Certification at 63-65.)

[9] Moreover, if government agencies actually needed access to the documents submitted to this Court, they could make a motion to intervene.  *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 229 F.R.D. 126, 130 (S.D. Tex. 2005) ("It is well established that nonparties to a case seeking access to documents and records under a protective order or under seal in a civil case may do so by a motion for permissive intervention under Rule 24(b)(2).").

Even if these agencies did not have their own examination and subpoena powers, however, there would still be no reason to unseal the entire Court docket merely because of the possibility that an agency might in the future seek access to a sealed document.  The Protective Order expressly contemplates that third parties (including government agencies) may subpoena one party to produce documents that have been designated confidential by the other party. Paragraph 4(E) of the Protective Order provides explains that if a party becomes "obligated to disclose the information in response to a lawful subpoena or other legal process, the Receiving Party shall give prompt written notice . . . within five calendar days . . . to allow the Producing Party the opportunity to intervene and seek judicial protection . . . ."  (Protective Order, at 4.) Consequently, the Court need not delve into the hypothetical possibility that a government agency may seek a document that has been filed under seal.  Should such a request ever actually occur, the parties would simply proceed under the process set forth in the Protective Order –with the benefit of an actual, non-hypothetical request from an actual requesting party who could explain the necessity of unsealing a document in a particular situation.

### B.   ABSENT PUTATIVE CLASS MEMBERS HAVE NO INDEPENDENT RIGHT TO ACCESS CONFIDENTIAL DOCUMENTS, AND PLAINTIFFS' SUGGESTION TO THE CONTRARY UNDERSCORES WHY CLASS TREATMENT IS INAPPROPRIATE IN THIS CASE.

Plaintiffs' alternative rationale for unsealing the record—that absent putative class members have an interest in viewing the sealed documents—is similarly untenable.  Class action litigation is conducted by the named plaintiffs and their lawyers on behalf of the class; it is the job of the purported class representatives to conduct the litigation (including evaluating the evidence) so the putative class members do not have to.  *See, e.g., General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (class litigation is an "exception to the usual rule that litigation is conduct by and on behalf of the individual named parties only").  Short of a

motion to intervene, absent class members have no right to conduct discovery, engage in motion practice, or the like, and they certainly have no interest separate from those of putative class counsel to view sealed documents.  To the extent that plaintiffs' motion asserts that they do have an individual interest in doing so, that merely underscores why class certification must be denied. The superiority requirement of Rule 23(b)(3) requires that the Court consider "the class members' interests in individually controlling the prosecution or defense of separate actions" before certifying a class.  If plaintiffs are correct that absent class members have an enforceable individual interest in evaluating potential evidence and acting on their individual evaluation of such materials (*see* Pl. Mot. at 17), that suggests that class certification should be denied, not that the docket should be unsealed.

### C.   THE "OPEN ACCESS" DOCTRINE HAS NO APPLICATION TO PLAINTIFF'S MOTION TO UNSEAL.

There is no question that there is a common-law interest in public access to judicial records.  But none of the authorities plaintiffs cite justify the wholesale unsealing of a party's confidential documents filed as part of pretrial motion practice.  *SEC v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993), for example, reversed a district court's decision to seal its own transcript of proceedings and final order of permanent injunction, and said nothing about unsealing confidential documents produced by a party.  (Even then, the Fifth Circuit held merely that the district court had failed to properly balance the competing interests of the parties and the general public, and not that sealing such court records was improper as a matter of law.)  And *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423 (5th Cir. 1981), actually upheld a district court decision that ***denied*** a motion to unseal taped evidence, thus putting paid to plaintiffs' suggestion that there is an automatic presumption requiring unsealing of confidential documents that are submitted in court proceedings.

A number of decisions hold that the public's interest in open access to evidentiary materials arises only in the context of evidence proffered at trial, and not documents submitted prior to trial.  For example, the Eleventh Circuit has held that "material filed with discovery motions is not subject to the common-law right of access . . . ."  *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2004).  That is significant here, since plaintiffs' motion relies heavily on documents attached to briefing on a previous discovery motion.  (*See* Pl. Mot. at 14-15.)  Similarly, the Second Circuit has held that documents not introduced at trial are properly afforded confidential treatment, even if the same documents might need to be unsealed if proffered at trial.  *See SEC v. TheStreet.com*, 273 F.3d 222, 229-30 (2d Cir. N.Y. 2001) ("Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless 'annoyance, embarrassment, oppression, or undue burden or expense.'  And if previously-entered protective orders have no presumptive entitlement to remain in force, parties would resort less often to the judicial system for fear that such orders would be readily set aside in the future." (quoting Fed. R. Civ. P. 26(c).).

Faced with a very similar motion—a motion to unseal by a party that already had complete access to the confidential documents pursuant to a stipulated protective order—the Fourth Circuit refused to unseal the record.  *Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004).  Recognizing the fundamental unfairness of allowing a party to unseal the record after gaining access to documents based on the producing party's reliance on a protective order, the Fourth Circuit was not persuaded by the theoretical public interest in unsealing the record.  *See id.* ("Pittston already had access to the documents covered by the protective order.  Moreover, Pittston itself agreed to the sealing of the documents in order to benefit from a more

open discovery from BCOA . . . .").

So too here.  There is no exigency justifying unsealing Fannie Mae's confidential documents at this juncture.  No third party has requested access to such documents.  The Court's ruling on the pending class certification motion will not be affected one way or the other by maintaining the protection afforded to Fannie Mae's documents under the Protective Order. Fannie Mae relied on the provisions of the Protective Order in producing, without objection, more than 200,000 pages of documents.  In these circumstances, plaintiffs' motion to unseal the docket should be denied.

CONCLUSION

For the foregoing reasons, Fannie Mae respectfully requests that the Court deny plaintiffs' motion to unseal the record.

Dated: May 28, 2008                    Respectfully submitted,


                                       */s/ Lance Lee*
                                       Lance Lee

                                       Texas Bar No.  24004762
                                       YOUNG, PICKETT & LEE
                                       4122 Texas Blvd.-P.O. Box 1897
                                       Texarkana, TX-AR 75504-1897
                                       Telephone:     903/794-1303
                                       Facsimile:     903/792-5098

                                       COUNSEL FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED.R.CIV.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy via email transmission, facsimile and/or U.S. Mail this 28th day of May, 2008.

<u>/s/ Lance Lee</u>
Lance Lee